UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA WILKINS as the Personal
Representative of the ESTATE OF
DEANDRE JACKSON, Deceased,

    Plaintiff,

-vs-

MICHIGAN DEPARTMENT OF
CORRECTIONS,

    Defendant.
_____

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Attorneys for Plaintiff
1300 Broadway Street, Fifth Floor
Detroit, MI 48226
P: (313) 777-7529 / F: (313) 771-5785
Michael@markolaw.com
_____

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.
_____

## **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff Carla Wilkins as the Personal Representative of the Estate of DeAndre Jackson, by and through her attorneys, Marko Law, PLLC, and for her Complaint against the above-named Defendant, states as follows:

1

## NATURE OF ACTION

1. Plaintiff Carla Wilkins, as the personal representative for the Estate of DeAndre Jackson (hereinafter "Jackson") brings this action against Defendant Michigan Department of Corrections (hereinafter the "Department") seeking among other things compensatory damages arising out of the wrongful death of Jackson.

## JURISDICTION AND VENUE

2. Jurisdiction is proper because the amount in controversy exceeds this Court's jurisdictional limit, not including costs, interests, and attorney fees.

3. Venue is proper because Defendant conducts business in Jackson County, material transactions and occurrences took place in Jackson County, Michigan.

## PARTIES

4. Defendant, Michigan Department of Corrections is one of the principal state departments. It oversees prisons and the parole and  probation population in the state of Michigan. Besides the G. Robert Cotton Correctional Facility, Defendant has 30 other prison facilities, and a Special Alternative Incarceration Program, together composing approximately 41,000 prisoners. Another 71,000 probationers and parolees under its supervision. The Department employs around 6,500 corrections officers.

## STATEMENT OF FACTS

5. The Michigan Department of Corrections is one of the principal state departments.

6. Deputy Director Jeremy Bush headed the Correctional Facilities Administration, also known as the Central Office.

7. Deputy Director Bush reported to Director Heidi Washington.

8. Deputy Director Bush was responsible for the operation of all correctional institutions operated by the Department and supervised the Central Records Section, the Classification Section, the Emergency Management Section, the Mental Health Services, and the Regional Health Administrators.

9. The Department's Central Office kept files on all prisoners.

10. The Security Level Classification Section screened inmates to determine management and confinement requirements within the Department.

11. The Department had security Levels I through IV and Segregation. Level I was the least secure. Segregation was the most secure.

12. The Classification Committee makes a final determination as to the classification level of each prisoner.

13. The concerns for the Classification Committee are the potential for escape and misbehavior while in prison, as well as an individual's past behavior while in jail. A prisoner known to have enemies, identified by either staff or the prisoner, is kept separated throughout their incarceration. Offenders needing special protection are assigned to a protective environment within various prisons.

14. Deandre Jackson was housed at the G. Robert Cotton Correctional Facility located at the intersection of Elm Road and I-94 in Jackson County.



15. Deandre Jackson had many enemies within the facility.

16. The Department documented Jackson's misbehavior while in prison. While in prison, the Department gave Jackson around six Class I misconducts.

17. On or about June 9, 2020, the Department reclassified Jackson from Security Level II to Security Level IV.

18. On or about July 28, 2020, Jackson got into a fight with fellow prisoner Laverty.

19. The Department gave Jackson 10 days segregation. The Department wanted to transfer Jackson back to Security Level IV. The Security Classification Committee recommended Jackson remain in segregation while awaiting transfer.

20. On or about October 27, 2020, the Security Classification Committee held Jackson's 30-day review. The Department held Jackson in segregation while awaiting transfer. The Security Classification Committee determined to keep Jackson in segregation pending transfer.

21. On or about November 30, 2020, the Security Classification Committee again held Jackson's 30-day review. The Department kept Jackson in segregation but decided to look at his victim's status and see if Jackson can go out to Security Level IV.

22. On or about February 1, 2021, the Department released Jackson to general population again at the G. Robert Cotton Correctional Facility.

23. Central Office gave the direction against the Security Classification Committee, which stood by its decision to transfer Jackson to an alternate facility.

24. On or about April 1, 2021, the Department's Parole Board denied Jackson's parole, in part, because of his criminal behavior: victimized a stranger with a dangerous weapon.

25. On or about June 11, 2021, Jackson was murdered while in the custody of the Department.

26. Around 7:29 a.m., Corrections Officer Jerald Nugent opened cell doors for breakfast. Jackson exited his cell and walked down the hallway toward Prisoner Angelo Allen. Jackson and Allen got into a fight and exchanged punches to each other's neck and head.

27. Prisoner Talleon Brazil stabbed Jackson twice with an 8" metal shank.

28. Officer Nugent then tased Jackson.

29. At 7:37 a.m., Physician's Assistant Kristen Austin and Health Unit Manager Landfair responded to Jackson, who was laying on his right side, unresponsive, but breathing.

5

30. Jackson had two ECD probes in his body, blood coming from a laceration on the left side of his chin. Jackson was bleeding from the mouth and nose, with swelling on the left side of his head. Austin secured the head/neck of Jackson with her hands until Landfair retrieved a C-Collar. PA Austin applied the C-Collar to support Jackson's neck and spine. HUM Landfair applied 5 liters of oxygen until it was determined Jackson needed a higher level of oxygen. The oxygen was increased to 25 liters. Officer Clasgens retrieved the AED and gave it to Officer Nugent. Nugent turned on the AED, applied the pads and awaited further directions. The AED cycled six times, stating, "no shock advised."

31. Corrections Officer Brenda Schmeltz began video recording the incident.

32. HUM Landfair attempted to place an IV without success.

33. Jackson's pupils were fixed and dilated.

34. PA Austin removed both ECD probes, one from lower abdomen and one from lower back.

35. At 7:32 a.m., Control Center called Jackson Community Ambulance.

36. At 7:46 a.m., the ambulance arrived at G. Robert Cotton Correctional Facility.

37. At 8:05 a.m., Corrections Officer Christopher Herren and Lichota escorted Jackson from J-Unit to Henry Ford Allegiance Health Emergency Room for stab wounds.

38. While in the Sally Port, Jackson went into cardiac arrest.

39. At 8:15 a.m., the ambulance arrived at Henry Ford.

40. At 8:44 a.m., Doctor Leslie Combs pronounced Jackson dead.

41. As a result of the Department's actions, Wilkins has suffered and will continue to suffer, including but not limited to, the following:

    a. Stress;

    b. Humiliation;

    c. Non-economic damages;

    d. Economic damages;

    e. Punitive damages;

    f. All other injuries to be discovered throughout discovery;

    g. Attorney fees and costs.

## COUNT I
## 42 U.S.C. § 1983
## VIOLATION OF THE EIGHTH AMENDMENT

42. Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

43. Decedent was entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of the State of Michigan and the United States.

44. At all times relevant, Defendants were acting within the course and scope of their employment with the State of Michigan and the Department of Corrections and were acting under color of state law with the authority granted to them as corrections officers or correctional health care providers or Sergeants.

45. Pursuant to the Eighth Amendment of the United States Constitution, Jackson had a right to be free from cruel and unusual punishment while incarcerated and under the custody and control of the State of Michigan.

46. At all times, Defendants, with malice, recklessness, and/or deliberate indifference, released Jackson to general population against the advice of SCC, after they were notified of an imminent threat of danger to Jackson. The aforementioned combined in whole or in part to cause pain, suffering, deterioration of health, and ultimately the tragic death of Jackson.

47. Defendants, pursuant to the Eighth Amendment, were required to provide and/or obtain adequate security and protection for the Decedent.

48. However, to the contrary, Defendants acted with malice, recklessness, and/or deliberate indifference when they failed to provide or obtain any protection that was necessary to save Jackson's life.

49. The Department's actions—releasing Jackson into general population in deliberate indifference to the Security Classification recommendation—placed Jackson in danger and caused his death.

50. The actions and/or omissions of the various Defendants constitute a deliberate indifference to the serious needs of Jackson and demonstrated a reckless, willful and/or wanton disregard for the health and safety of Jackson in violation of the Eighth Amendment.

51. As a direct and proximate result of the actions and/or omissions of the various Defendants, Jackson suffered great pain, emotional distress, suffering, and early death.

52. As a direct and proximate result of the actions and/or omissions of the various Defendants, the Estate has sustained and is entitled to compensation for conscious pain and suffering of the deceased during the period intervening between the time of the injury and

death, funeral and burial expenses, damages for the loss of financial support and loss of society and companionship of the deceased.

53. Jackson is survived by one or more persons eligible to recover damages under the Wrongful Death Act.

54. By the aforementioned actions and/or omissions, Defendants have deprived Jackson of the rights secured by the Eighth Amendment to the United States Constitution.

## COUNT II
## GROSS NEGLIGENCE, WILLFUL, AND WANTON CONDUCT ALL DEFENDANTS

55. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

56. At all times relevant hereto, the individually named officers, deputies, and/or corrections officers were acting within the course and scope of their employment with Michigan Department of Corrections.

57. Defendants owed Jackson the duty to provide security.

58. Defendants, acting within the scope of their employment with the State, breached this duty and were grossly negligent as that term is defined in MCL § 691.1407(2)(c), when they acted with willful and wanton disregard for the health and welfare and safety of the decedent by the actions described above; said acts having been committed intentionally or so recklessly as to demonstrate a substantial lack of concern as to whether injury would result and/or their acts of willful and wanton misconduct toward Jackson and in disregard for his health, safety and constitutional/statutory rights.

9

59. At all relevant times, Defendants were grossly negligent and/or committed acts of willful and wanton misconduct in one or more of the following ways:

 a. Failure to properly train personnel in evaluating whether a detainee needs to be segregated;

 b. Failing to care for the basic needs of detainees and inmates, specifically those of Jackson;

 c. Disregarding Jackson's obvious need to be segregated from general population at the G. Robert Cotton Correctional Facility;

 d. Disregarding Jackson's obvious need to be transferred out of the G. Robert Cotton Correctional Facility;

 e. Failing to timely have Jackson evaluated by staff;

 f. Failing to refrain from acting with gross negligence or deliberate indifference toward or willful disregard of any violation of Jackson's constitutional rights;

 g. Failing to refrain from intentionally denying or delaying Jackson's transfer;

 h. Any other breaches which become known during discovery.

60. Defendants' conduct was and remains extreme and outrageous, subjecting Defendants to punitive damages.

61. As the direct and proximate result of the above cited violations of Jackson's civil rights by Defendants, Jackson died and thus his estate has and will continue to suffer damages in the future, including, but not limited to:

 a. Reasonable funeral and burial expenses;

 b. Reasonable compensation for the pain and suffering undergone by Jackson while he was conscious during the time between the fight and his death;

  c.  Loss of financial support;

  d.  Loss of service;

  e.  Loss of gifts or other valuable gratuities;

  f.  Loss of society and companionship; and

  g.  Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, MCLA § 600.2922.

WHEREFORE, Plaintiff, Carla Wilkins, as Personal Representative of the Estate of Deandre Jackson, deceased, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, pursuant to 42 U.S.C. §1983, in an amount in excess of $75,000 together with costs, interest, attorney fees, and punitive damages.

            Respectfully submitted,

            */s/ Michael L. Jones*
            Michael L. Jones (P85223)
            **MARKO LAW, PLLC**
            1300 Broadway, Fifth Floor
            Detroit, MI 48226
            (313) 777-7529 / Fax: 313-771-5728
            michael@markolaw.com

Dated: August 18, 2022

## **DEMAND FOR TRIAL BY JURY**

NOW COMES the above-named Plaintiff, by and through her attorneys, MARKO LAW, PLLC, and hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

*/s/ Michael L. Jones*
Michael L. Jones (P85223)
**MARKO LAW, PLLC**
1300 Broadway, Fifth Floor
Detroit, MI 48226
(313) 777-7529 / Fax: 313-771-5728
michael@markolaw.com

Dated: August 18, 2022